CHARLES PERCIVAL

*v.*

JOSEPH W. GALE.

After a mortgagor's death the mortgagee advanced money, at various times, to his widow, who was his administratrix, and also the guardian of his infant son. On a settlement between them the balance due from the widow was fixed at $100, which she agreed should be added to the $600 previously due on the mortgage. The mortgagee afterwards assigned the mortgage to the complainant for $700, and the widow paid interest thereon for several years. After her death the son, who had meanwhile attained his majority, tendered the complainant $600 as the principal due on the mortgage, which he refused and began to foreclose.—*Held*, that as between the assignee and heir-at-law, since there was no proof that the mortgagor's estate had received the benefit of the $100, the widow had no power to add that amount to the mortgage, so as to increase the encumbrance on the land descended, and that the defendant's tender was, consequently, valid.

On bill to foreclose.

*Mr. Peter L. Voorhees*, for complainant.

*Mr. John W. Wartman*, for defendant.

BIRD, V. C.

This bill is to foreclose a mortgage. The only question is as to the amount due. The complainant claims $700 of principal, while the defendant insists that there are only $600 due. The defendant made a tender of the $600 before suit. He tendered nothing more, and now insists that the complainant had claimed that $700 was the principal for a long time, and that he had paid interest on that sum in excess for six years six months and eight days, so that the amount of the interest for that period on the $100 was more than the interest due on the $600 at the time of the tender. In other words, considering the amount thus paid in excess under a misapprehension, there were only $600

due when the tender was made. At or before the filing of the answer the same amount was paid into court.

The bond and mortgage were given by Budd D. Gale to W. W. Bogartt, who afterwards assigned them to the complainant. Bogartt's testimony makes it very plain that the mortgage was, at one time, actually reduced from $1,300 to $600. After it was so reduced the mortgagor died. His widow became the administratrix of his estate. After the mortgage was so reduced in value, Bogartt says that he advanced money to the administratrix, and, in settlement, it was found that $100 were due to him, to secure which it was agreed that he should hold the said mortgage for $700 instead of for only $600. It appears that he received that amount when he assigned it.

The mother of the defendant was not only administratrix of the estate of the mortgagor, but was also guardian of her son, the defendant. The mother died in February, 1883. On August 4th, 1884, the defendant became of age, soon after which he learned of the amount which had actually been paid on the bond.

As between this heir-at-law and the assignees of the mortgage, ought the claim for $700 to be enforced? I think not. I believe that the mortgagor may voluntarily increase the amount due upon a mortgage in the manner above presented, because the land he is burdening is his; but I cannot perceive any ground for such right on the part of his administratrix. The administratrix had no power to execute a mortgage on the real estate of the intestate. She did not own the land, and, in that capacity, had no interest in the land. Indeed, except in case of debts which the personal estate would not pay, she could not reach the land for any purpose, and then only through an order of the orphans court.

Nor can it be said that it will be equitable to allow this $100, at this time, because the estate of the intestate had the benefit of it. I say it would not be equitable, because there is no sufficient proof that the estate had the benefit of it. Besides, the pleadings are not framed to raise such an issue. And if that were possible, under the circumstances of this case, I think the court should

Percival *v.* Gale.

wait long before entertaining the question at all. How can this heir-at-law meet such an issue in this court? How can he be called upon to answer whether or not that $100 was used by the administratrix to his advantage in discharging the liabilities against his father's estate. The orphans court was the tribunal to raise and to determine that question, and the person to present it was the administratrix herself upon the filing of the account. And as to the proof, what is it? Most uncertain. There is the oath of the mortgagee that he advanced the money, and there the proof ends. Whether it was used for the estate or not in no sense appears. Therefore, to decree that this money was devoted to the interests of the estate would be making a decree without any proof for it to rest upon. Everyone would pronounce such course highly inequitable.

Was the tender good in law? As I understand the evidence, the interest had been paid on $700 until May 1st, 1884, and that it had been paid at this rate for six years and six months after the mortgage had been reduced to $600; finding as I have above, the interest paid in excess must be credited upon the principal. The interest so paid amounted to at least $45.50, which would make the principal due May 1st, 1884, $549.50. On October 4th following, the tender of the $600 was made, at which time there was less than $19 interest due, making the whole amount due less than $568.50. Therefore, as the tender was made without demanding any change, or without any other condition whatever, and as the only ground of refusing to accept it was that it was not enough, the law pronounces the tender good.

The complainant is entitled to the $600, without costs, and the defendant is entitled to his costs.

I will so advise.